FILED
DISTRICT COURT OF GUAM
JUL -7 2005
MARY L.M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| HENRY FRESNOZA,<br><br>  Petitioner,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | Criminal Case No. 01-00013<br><br>Civil Case No. 04-00020<br><br><br>ORDER |

Petitioner Henry Fresnoza ("Fresnoza") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion") and a request for Writ of *Audita Querela* ("Writ").[1] The Court deems the matter appropriate for decision without oral argument. FED.R. CIV. P. 78. After considering the parties' submissions, the Court DENIES both of Fresnoza's requests for relief.

## BACKGROUND

On February 15, 2001 Fresnoza pled guilty to one count of Attempted Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 846. At the time of his plea, Fresnoza stipulated to facts contained in his plea agreement that:

> On February 12, 2001, a United States Customs Service (USCS) Cooperating Witness (CW) told a Drug Enforcement Administration (DEA) Task Force Agent (TFA) that [Fresnoza] had purchased large quantities of crystal methamphetamine (a.k.a. "ice") from him/her several times. The CW also admitted that he/she used the [Fresnoza's] home to package "ice" for

---

[1] Fresnoza filed his initial Motion and "Memorandums of Points and Authorities in Support Movant's Title 28 U.S.C. § 2255" on April 12, 2004. *See*, Docket Nos. 55 and 56, respectively. On February 9, 2005 and March 10, 2005, he then filed supplemental pleadings entitled "Under the All Writs Act" and "Judicial Notice of Adjudicative Facts" citing additional bases of relief for the Court's consideration. *See*, Docket Nos. 61 and 62, respectively.

distribution to avoid his/her spouse from gaining knowledge of his distribution. At approximately 7:30 P.M., USCS agents transported the CW to the Onward Hotel in Tamuning, Guam to attempt a delivery of "ice" to [Fresnoza]. The Agents gave the CW 200 grams of counterfeit "ice" to provide to [Fresnoza]. Neither the CW nor [Fresnoza] knew the ice was counterfeit.

At approximately the same time, DEA and Guam Customs Contraband Enforcement Team (CET) members established surveillance near [Fresnoza's] home. At approximately 8:28 P.M., agents directed the CW to call [Fresnoza] and discuss the sale of "ice." An agent dialed [Fresnoza's] home telephone number and gave the CW the telephone. During the conversation, the CW asked [Fresnoza] if he was ready. [Fresnoza] replied that he was ready. The CW then told [Fresnoza] to meet him/her at the Onward Hotel. The CW gave [Fresnoza] directions to the hotel and [Fresnoza] replied that he would be there soon.

At approximately 8:52 P.M., [Fresnoza] arrived at the CW's room and rung the doorbell. The CW invited [Fresnoza] into the room. Agents listened to and observed the CW meet with [Fresnoza] via video and audio monitor and recorder. During the meeting the CW told [Fresnoza] that the CW's source fronted him/her "ice" and the CW wanted [Fresnoza] to help him/her distribute it. The CW told [Fresnoza] that he/she had 200 grams of 'ice' to sell. The CW told [Fresnoza] that he/she wanted two hundred seventy-five dollars ($275.00) per gram. [Fresnoza] agreed to sell the "ice." Agents observed [Fresnoza] put the "ice" into his left pants pocket and leave the room. Agents arrested [Fresnoza] in the hallway of the hotel. Agents found the 200 grams of counterfeit "ice" in [Fresnoza's] left front pants pocket. The arresting Agents advised [Fresnoza] of his Miranda Rights, and he waived them.

[Fresnoza] told agents that he received a call from the CW to pick up "ice" from the Onward Hotel. [Fresnoza] also stated that he drove to the hotel and met with the CW. At the hotel [he] received 100 grams from the CW. The CW told him that he/she wanted $275.00 per gram for the "ice." [Fresnoza] told the agents the name of the individual who he intended to sell the "ice." [Fresnoza] also stated that he intended to sell the ice for approximately $300.00 per gram.[2]

On April 17, 2003, the Court sentenced Fresnoza to eighty-seven (87) months imprisonment. The judgment of conviction was entered on the docket on April 21, 2003. Fresnoza did not file a notice of appeal within ten (10) days after entry of the Court's judgment. His conviction became final on May 1, 2003.[3] *See,* FED R. APP. P. 4(b); *United States v.*

---

[2] *See,* Plea Agreement at ¶ 8, Docket No. 9.

[3] Due to a clerical error, the Judgment actually reflected that Fresnoza was guilty of the offense of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846. However, it is clear upon review of record, that in fact, Fresnoza pled guilty to Attempted Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and that the Court sentenced him for that offense. *United States v. Bergmann,* 836 F.2d 1220, 1221 (9th Cir.1988) ("It is the words pronounced by the judge at sentencing, not the words reduced to writing in the judge's Judgment/Commitment Order, that constitute the legal sentence."). Accordingly, the clerical error has no effect on the petitioner's present motion before the Court. The Judgment has since been amended pursuant to FED. R. CRIM. P. 36. *See,* Docket No. 65.

*Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2000) (holding a conviction is final if a notice of appeal is not filed within ten (10) days). Thereafter, Fresnoza, *pro se* and incarcerated, brought the Motion pursuant to 28 U.S.C. § 2255 on April 12, 2004, requesting the Court to vacate his conviction and sentence and the Writ on February 9, 2005, requesting a resentencing. *See,* Docket Nos. 55, 56, 61 and 62.

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[4] *See, United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck,* 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

### Jurisdictional Claims

Fresnoza claims this Court lacked jurisdiction to impose sentence on him for the following two reasons. First, he asserts that the District Court of Guam lacks jurisdiction to enforce any federal prohibitions against him since Guam is "outside of the federal Government's exclusive or concurrent federal territorial jurisdiction under Title 40 U.S.C. § 255".[5] However, the issue of whether the District Court of Guam has jurisdiction to hear criminal cases involving violations of federal law has been long since decided by the Ninth Circuit Court of Appeals in *United States v. Santos* 623 F. 2d 75 (9th Cir. 1980) (holding 48 U.S.C. 1424 and its subparts

---

[4] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

[5] *See,* Motion at page 6, Docket No. 55

creates a District Court of Guam and confers criminal jurisdiction upon it.)[6] Accordingly, this argument lacks merit and needs no further consideration.

Secondly, Fresnoza argues that his conviction is invalid because the laws under which he was convicted were not properly enacted. This too lacks merit and borders on the frivolous. In *United States v. Visman*, 919 F.2d 1390 (9th Cir. 1990), the Ninth Circuit expressly affirmed that "Congress may constitutionally regulate intrastate drug activity under 21 U.S.C.§ 841(a)(1)[7]." *Id.* at 1393 (citing *United States v. Montes-Zarate*, 552 F.2d 1330 (9th Cir. 1977) and *United States v. Rodriquez-Camacho*, 468 F2d 1220 (9th Cir. 1972). Even assuming that this law was not properly enacted, "Congress's failure to enact a title into positive law has only evidentiary significance and does not render the underlying enactment invalid or unenforceable." *Ryan v. Bilby*, 764 F. 2d 1325, 1328 (9th Cir. 1985).

**Ineffective Assistance of Counsel Claims**

Fresnoza's remaining claims concern whether his counsel was ineffective. He argues the following: 1) counsel failed to adequately explain the nature of the charge and the consequences of the plea; 2) counsel failed to assert entrapment as a mitigating factor at sentencing; 3) counsel failed to address the counterfeit nature of the substance as a mitigating factor at sentencing; 4) counsel failed to address the "controvertible issue of the amount of ice" involved in the transaction; 5) counsel failed to assert the "aberrant" nature of Fresnoza's conduct; and 6) counsel failed to assert the unconstitutional nature of the statute for which he was convicted.

To demonstrate ineffective assistance of counsel, petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the *Strickland* test by showing that "the behavior complained of falls below prevailing professional

---

[6] The Court notes that although 48 U.S.C. 1424 has undergone subsequent amendments since the Santos decision, throughout these amendments Congress has continuously granted the District Court of Guam jurisdiction over violations of the federal law including those that form the basis of Fresnoza's conviction.

[7] The statute states, in pertinent part:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally–
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance

21 U.S.C. § 841(a)(1).

norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into counsel's conduct probes "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. In engaging in such an inquiry, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" *Id.* at 689.

*Knowing and Voluntary Nature of Plea.* Fresnoza attempts to relitigate an issue previously decided by this Court.[8] In a motion to withdraw his guilty plea, Fresnoza claimed that his plea was not knowing and voluntary because he was not provided with adequate time and information to decide whether or not to plea, and he was not provided with an interpreter. The Court considered the matter and found that both arguments lacked merit. *See,* Docket No. 37. The Court notes that upon review of Fresnoza's pleadings in the instant matter, no new information is offered than what was presented to the Court in his initial motion to withdraw his plea. Absent any new information, this Court is hard pressed to change its ruling. Accordingly, the Court affirms its previous finding that Fresnoza's guilty plea was knowingly and voluntarily made. Likewise, Fresnoza's claim that his counsel was ineffective in this regard is also without merit.

*Sentencing Entrapment.* Next, Fresnoza claims that his attorney was ineffective at the sentencing by not attempting to "mitigate" his sentence. Fresnoza contends that his counsel failed to argue that the government engaged in "sentencing entrapment" or sentence factor manipulation in selecting the 200 grams as the amount to use in the "reverse-sting" operation. Review of the entire record in this matter, reveals that Fresnoza's argument that he suffered sentencing entrapment is baseless and unavailing.

Sentencing entrapment occurs when a defendant is unduly pressured by the government to commit a crime of greater severity than the defendant was originally willing to commit. *United States v. Robinson*, 94 F. 3d 1325, 1328,-29 (9th Cir. 1996). The defendant has the burden of proving such entrapment, by a preponderance of the evidence. *United States v. Riewe*,

---

[8] The Court notes that there was an extensive hearing on the matter on January 13, 2003 after which the Court issued a written decision and order denying Fresnoza's motion. The grounds serving as the basis for his motion to withdraw his plea are identical to those raised by Fresnoza in his first claim for ineffective assistance of counsel. *See,* Docket No. 37.

165 F.3d 727, 729 (9th Cir. 1998). Fresnoza fails to offer any evidence in support of entrapment other than to argue that the police controlled the amount of drugs in the sting operation, and the government, law enforcement agents and confidential informant are lying. Fresnoza seemingly would have this Court believe him over witnesses involved and in disregard of his own sworn statement at the time he entered into the plea.

The stipulated facts entered into between the government and Fresnoza at the time of his plea and subsequently affirmed under oath in the plea colloquy contradict Fresnoza's present contentions. Fresnoza admitted in the stipulated facts that he had purchased "large quantities" of crystal methamphetamine from the informant on multiple occasions, and that he had allowed the informant to package "ice" at his home.[9] These stipulated facts clearly demonstrate Fresnoza's predisposition and capacity to commit the crime on his own. But, perhaps the most compelling evidence of Fresnoza's predisposition to deal in large quantities of methamphetamine comes from his actions. The transcript of the transaction between the informant and Fresnoza reveals that he was informed that there were two bags, each containing 100 grams of purported methamphetamine. Fresnoza was given the option of taking one or two bags. He chose two, the greater amount.[10] After considering the totality of the circumstances surrounding this case and all of the evidence presented, the Court finds that Fresnoza has not met his burden and no sentencing entrapment occurred. Accordingly, Fresnoza's claim of ineffective assistance of counsel as to this ground is likewise without merit.

*Mixture and Amount of the Substance.* Fresnoza claims that his counsel was ineffective for failing to "mitigate" his sentence by challenging the amount of drugs involved. He claims that counsel should have argued that the counterfeit drugs used were not a "mixture" containing a real controlled substance and/or that Fresnoza was not in possession of the 200 grams on his person when arrested. Here again, Fresnoza's argument fails. The stipulation of facts recited in the plea agreement specifically indicated that Fresnoza received 200 grams from the informant and that 200 grams were recovered from Fresnoza's person. These facts were subsequently

---

[9] *See,* Plea Agreement at ¶ 8, Docket No. 9 and Transcript of Proceedings of the Waiver of Indictment and Plea Hearing on Thursday, February 15, 2001 ("Plea"), Docket No. 23.

[10] *See,* Decl. of Phillip Torres at Exhibit C, Docket No. 25. *See also,* Government's Opposition to Defendant's Motion to Withdraw Guilty Plea at Exhibit C, Docket No. 27.

affirmed by Fresnoza under oath during the plea colloquy.[11] A defendant's solemn declaration in open court at a plea colloquy carries a strong presumption of veracity. *See, United States v. Anderson*, 993 F. 2d 1435, 1438 (9th Cir. 1993); *United States v. Mims*, 928 F. 2d 310, 313 (9th Cir. 1991); *United States v. Hoyos*, 892 F. 2d 1387, 1400 (9th Cir. 1989). Fresnoza has not presented any evidence to counter this presumption. Accordingly, Fresnoza's claims of ineffective assistance of counsel in this regard also fails.

*Aberrant Behavior*. Fresnoza claims that counsel at his sentencing was deficient for failing to "mitigate" his sentence by arguing that the offense for which he was convicted was an aberration. As previously indicated, Fresnoza agreed that he had dealings with the informant on multiple occasions that involved "large quantities" of drugs. This Court finds that in light of these facts, the conduct of Fresnoza was not aberrant. Likewise, the Court finds that Fresnoza's claims of ineffective assistance in this regard are without merit.

*Unconstitutional Nature of the Drug Statute*. Title 28 U.S.C. § 1915(e) authorizes federal courts to dismiss a claim filed "if satisfied that the action is frivolous or malicious." Under this standard, a district court may review the motion and dismiss *sua sponte* those claims premised on meritless legal theories or clearly lacking any factual basis. *Denton v. Hernandez*, 112 S. Ct. 1728, 1730-31 (1992). *Pro se* pleadings must be liberally construed, however. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Upon a liberal review of Fresnoza's claim as to the constitutional nature of the drug statute, the Court is strained to find any legal or factual basis supporting Fresnoza's claims. The pleadings with respect to this issue are unintelligible and do not make any sense. "District courts have the authority to dismiss complaints founded on 'wholly fanciful' factual allegations for lack of subject matter jurisdiction." *See, Franklin v. Murphy*, 745 F2 1221, 1228 (9th Cir. 1984). Here is such an instance. Accordingly, the allegations of ineffective assistance of counsel for failing to question the constitutionality of the drug statute are dismissed and the Court will not consider them further.

---

[11] *See*, Plea at 14, Docket No. 23.

### Applicability of *Booker*

Fresnoza claims that his sentence was unconstitutionally enhanced in light of the recent Supreme Court decision in light of *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S.Ct. 738 (2005). Fresnoza's claim was final when *Blakely* was decided, so *Blakely* and by extension *Booker*, are applicable only if they apply retroactively to cases on collateral review. Fresnoza concedes that *Booker* would not apply if it was requested in a § 2255 proceeding, however he seemingly believes that in filing his request in the from of a writ of *audita querela*, pursuant to the "All Writs Act" (28 U.S.C. 1651) *Booker* is applicable.

Writs of *audita querela*, are only available to the extent that they fill "gaps" in the current system of post-conviction relief. *United States v. Valdez-Pacheco* 237 F. 3d 1077 (9th Cir. 2001). Writs of *audita querela* are a valid form of collateral attack apart from and in addition to § 2255 proceedings. *See, United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247 (1954) (citing *United States v. Hayman*, 342 U.S. 205, 219, 72 S.Ct. 263, 272). Nonetheless, a writ of *audita querela* is still a form of **collateral** review that is an extraordinary remedy to be employed by the courts "only under circumstances compelling such action to achieve justice." *Id.* At 511.

Supreme Court holdings that create new rules apply to cases on collateral review only in limited circumstances. *Schriro v. Summerlin*, 124 S. Ct. 2519, 2552 (2004). New substantive rules generally apply retroactively because the risk is great that the defendant's conviction was based on conduct the law no longer makes criminal. *Id.* (citations omitted). Procedural rules, however, only apply retroactively if they fall into an extremely narrow "set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (*quoting Saffle v. Parks*, 494 U.S. 484, 495, 110 S. Ct. 1257, 1264 (1990)).

Fresnoza's claim rests on recent Supreme Court cases holding that any fact relied upon to increase a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Booker*, 125 S.Ct. At 756; *Blakely*, 124 S. Ct. At 2543; *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000).

Nonetheless, *Booker* and its predecessors do not apply retroactively to cases on collateral review. The Supreme Court has strongly indicated that *Blakely* does not apply to cases on

collateral review. In *Schriro v. Summerlin*, issued the same day as *Blakely*, the Court held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), does not apply retroactively to cases on collateral review. *Summerlin*, 124 S. Ct. At 2526. *Ring*, like *Blakely*, involved an extension of the Court's holding in *Apprendi*. *Id*. The Court held in *Ring* that aggravating factors relied on to impose the death penalty must be proved to a jury, not a judge. *Id*. at 2522. The Court in *Summerlin* reasoned that this new rule was procedural, not substantive, because it did not alter the range of conduct subject to a particular punishment, but rather "altered the range of permissible methods" for determining the punishment. *Id*. at 2523. The Court further reasoned that it was not a "watershed rule" of criminal procedure because judicial fact finding is not likely to "so seriously diminish accuracy as to produce an impermissibly large risk of injustice." *Id*. at 2525.

Based on the Court's explicit holding in *Summerlin* that *Apprendi* and *Ring* do not apply retroactively to cases on collateral review, it follows that *Blakely* and *Booker*, also extensions of *Apprendi*, do not apply retroactively to cases on collateral review. *Id*. Justice O'Connor's dissent in *Blakely* recognized the Court's holding in *Summerlin* that "*Ring* (and *a fortiori Apprendi*) does not apply retroactively on habeas review." 124 S. Ct. At 2548-49. In addition, Justice Breyer expressly stated that *Booker* applied only "to all cases on direct review." 125 S. Ct. at 769. This express statement in *Booker* could not be any clearer. The Court in *Booker* is not specifically addressing motions brought under §2255. Rather, it excludes all cases not pending on "direct review", necessarily excluding its application to any cases on collateral review, including writs of *audita querela*.

Further, all federal courts addressing this same issue of retroactive application have held *Blakely* and *Booker* do not apply retroactively to cases on collateral review. *See, Green v. United States*, 397 F.3d 101 (2nd Cir. 2005); *Guzman v. United States*, 404 F. 3d 139 (2nd Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *McReynolds v. United States*, 397 F. 3d 479 (7th Cir. 2005); *In re Anderson*, 396 F. 3d 1336 (11th Cir. 2005); *Varela v. United States*, 400 F. 3d 864 (11th Cir. 2005); *Tuttamore v. United States*, 2005 WL 234368 (N.D. Ohio, 2005).

Accordingly, Fresnoza's contention that *Booker* applies to his sentence is without merit[12] and his requests with respect to that claim are denied.

## CONCLUSION

Based on the aforementioned reasons this Court finds that all claims raised by Fresnoza are without merit. Accordingly, the Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 and request for Writ of *Audita Querela* are DENIED.

**IT IS SO ORDERED** this 7th day of July, 2005.

_____
Robert M. Takasugi[*]
United States District Judge

Notice is hereby given that this document was entered on the docket on 7-7-05.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: Marilyn B Alcon   7-7-05
Deputy Clerk / Date

---

[12] Even if *Booker* could be applied through a writ of *audita querela* the Court believes that in light of the extraordinary nature of this type of remedy, the circumstances presented by Fresnoza do not warrant the relief requested. The court also notes that the defendant has failed to provide any evidence that his sentence would have been different should the sentencing Judge have known that the guidelines were merely advisory.

[*] The Honorable Robert M. Takasugi, United States District Judge for Central California, by designation